IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DANY LANZA,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF CHICAGO, Chicago Police<br>Officers ROBERT BARTIK, L. RIGGIO, Star<br>No. 40170, M. GONZALEZ, Star No. 40253,<br>J. ACOSTA, Star No. 40288,<br>B. OKRASINSKI, Star No. 7247,<br>F. HERRERA, Star No. 13273, F. SKOROEK,<br>Star No. 21295, M. SOFERERNNOVIC, Star<br>No. 20761, and UNKNOWN CHICAGO POLICE<br>OFFICERS,<br><br>        Defendants. | FILED: SEPTEMBER 8, 2008<br>08CV5103<br>JUDGE ANDERSEN<br>MAGISTRATE JUDGE NOLAN<br>YM<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, DANY LANZA, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO; Chicago Police Officers ROBERT BARTIK; L. RIGGIO, Star No. 40170; M. GONZALEZ, Star No. 40253; J. ACOSTA, Star No. 40288; B. OKRASINSKI, Star No. 7247; F. HERRERA, Star No. 13273; F. SKOROEK, Star No. 21295; M. SOFERERNNOVIC, Star No. 20761; and other UNKNOWN CHICAGO POLICE OFFICERS (collectively, "Defendant Officers"), states as follows:

### Introduction

1.    Plaintiff brings this suit seeking redress for violations of his constitutional rights.  Specifically, Plaintiff alleges that the Defendant Officers falsely accused him of

confessing to molesting two young girls.  On the basis of the Defendant Officers' fabricated confession, the then-fifteen year-old Plaintiff spent almost four years wrongfully incarcerated until the real molester was identified and the prosecutor agreed to drop all charges against Plaintiff.

### Jurisdiction and Venue

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.   Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

### Factual Background

4.   Plaintiff Dany Lanza is twenty-two years-old.  At the time of his false arrest, Plaintiff was only fifteen years-old and a student at Roberto Clemente high school.  Plaintiff had never been charged with committing any crime whatsoever either then or since, apart from the false charges complained of herein.

5.   On or about November 26, 2001, Plaintiff was visiting his aunt's family at her apartment complex in Chicago. While he was with his cousin trying to get the building manager to fix the boiler for his aunt's apartment, Plaintiff was approached by a woman claiming that he looked like someone who had molested her daughter some months ago.

6.     Plaintiff did not speak English and did not understand what the woman was saying.  To clarify the confusion, Plaintiff's cousin went to alert Plaintiff's mother.

7.     Knowing that her son did nothing wrong, and hoping to clear up any dispute as expeditiously as possible, Plaintiff's mother summoned the police to the scene.

8.     Defendants Okrasinski and Herrera arrived and brought Plaintiff to the police station for investigation.  At the scene, Plaintiff's mother informed the officers that Plaintiff was only fifteen years-old, but she (nor any other family member) was not permitted to accompany him to the police station.

### Plaintiff's Interrogation

9.     At the police station, Plaintiff was interrogated at length about the molestations.  Plaintiff, in Spanish, emphatically told his interrogators that he had nothing to do with the crime.  Plaintiff was not read his *Miranda* warnings prior to his questioning.

10.    All told, the fifteen year-old Plaintiff held for over forty-eight hours without any legitimate law enforcement justification for holding him that length of time.  During his interrogation, he was never fed, he was never allowed to make a telephone call (despite his repeated requests), and he was never permitted to see his mother or any other member of his family.

3

11.   After repeatedly denying that he had anything to do with the crime, Plaintiff finally requested that he be given a lie detector examination to prove his innocence.

12.   Plaintiff was taken to Defendant Bartik, a polygraph examiner for the Chicago Police Department.

13.   Rather than giving Plaintiff a polygraph examination as requested, however, the Defendant Officers continued to interrogate Plaintiff in the polygraph room.  After refusing to confess, Plaintiff was taken back to the police station for further interrogation.

14.   Unbeknownst to Plaintiff, however, Defendant Bartik and other Defendant Officers concocted a story that Plaintiff had confessed to the crimes while he was being questioned before the polygraph examination.

15.   Specifically, Bartik and the two detectives claimed that before Bartik had the opportunity to give Plaintiff a lie detector test, Plaintiff supposedly blurted out a confession to the molestation.

16.   Sadly, Plaintiff was not the only person who had been victimized by Defendant Bartik in the exact same manner.

### Defendant Bartik's History

17.   In fact, Defendant Bartik has made a practice of falsely claiming that other persons orally confessed to him, as exemplified by the following examples:

4

a.    Defendant Bartik falsely claimed that Donny McGee orally confessed to a gruesome murder before Bartik had the chance to administer a lie detector test to Mr. McGee.  Despite Bartik's claim that Mr. McGee confessed, Mr. McGee was acquitted at trial after the evidence revealed that Mr. McGee was making phone calls to his groomsmen in preparation for his upcoming wedding at the time of the murder.  Furthermore, additional DNA testing performed on blood found at the scene of the murder excluded Mr. McGee.

b.    Defendant Bartik also falsely claimed that John Fulton orally confessed to him.  Bartik, however, did not tell the prosecutor or the investigating detectives about this supposed confession until within a week before trial.  Again, as in this case, Bartik claimed that Mr. Fulton confessed to him even before he had the chance to administer a lie detector test to him.

c.    Defendant Bartik also falsely claimed that Lamar Blount orally confessed to murder, supposedly before Bartik had the chance to give him a lie detector test.  Despite that alleged confession, Mr. Blount was cleared of all charges.

d.    Defendant Bartik falsely claimed that Rory Cook orally confessed to him about committing a murder.  According to Bartik, Mr. Cook also blurted out his confession before he could administer a lie detector test.

18.   In the realm of polygraph administration, it is extremely rare for someone to confess prior to the examination. For this to supposedly happen repeatedly with Bartik defies all statistical probability.

### Plaintiff's Mother Attempts to See Her Son

19.   Meanwhile, back at the police station, Plaintiff's mother repeatedly tried to see her son but was prevented from doing so by unknown Defendant Officers.  She told these unknown Defendant Officers that her son was only fifteen years-old, but was still denied access.

20.   The first night that Plaintiff was arrested, his mother waited at the police station until approximately 2 a.m. in an effort to see her son, but she was never permitted access to him.  She offered to bring food for her son but was told (falsely) that the officers were taking care of his needs.

21.   On the second day of Plaintiff's arrest, his mother returned to the police station, but was told that she still could not see her son.  Unknown Defendant Officers, however, told her that her son would call her soon and that she should return home to await his call.

22.   Plaintiff's mother returned home but did not receive any call from her son that day.  Realizing that she could not help her son by herself, she hired and paid a private attorney to represent her son.

23.   Acting on Plaintiff's behalf, that attorney went to the police station and specifically told certain of the Defendant Officers not to interrogate or have any further contact with Plaintiff whatsoever.

24.   Defendants ignored the invocation of Plaintiff's Fifth Amendment rights and continued his interrogation.

### Plaintiff's Fabricated Confession

25.   Plaintiff was interrogated almost constantly during his incarceration at the police station, a period that lasted over forty-eight hours.  In addition to not being fed, not having contact with his family, and not being allowed to make a telephone call, the Defendant Officers who questioned him began to threaten Plaintiff.  They told Plaintiff that they would have him taken to the County jail where he would be raped.  He was told that he would never see his mother again.

26.   Finally, Plaintiff was given a form to sign.  The form was in English, a language that he was unable to speak, read, or write.  Plaintiff was told that if he signed the form where indicated, he could go home.  One of the Defendant Officers even pretended to place a telephone call to his mother, acting out a conversation in which she was supposedly told to come pick up Plaintiff from the police station.  Based on what the Defendant Officers were telling him, Plaintiff signed the form.

7

27. Unbeknownst to Plaintiff, the form that he signed was actually a fabricated confession. The confession was totally false and was fabricated by the Defendant Officers.

28. On the basis of his fabricated confession, Plaintiff was transferred to the Cook County Jail and charged with twenty-six counts of sexual assault to a minor and related offenses. That confession was introduced as evidence against Plaintiff at various hearings during his criminal case.

29. Plaintiff was forced to live as an innocent fifteen year-old boy among adult murderers and rapists at Cook County Jail. The terror he experienced each day as a result of his incarceration was profoundly damaging.

30. Moreover, Plaintiff was not a hardened teenager at the time he was incarcerated. Not a member of any gang, Plaintiff was totally unfamiliar with the criminal justice system and the ways of criminals. Up until the false charges here, Plaintiff had never set foot in a courtroom or been questioned by police detectives.

31. It was not until years later that Plaintiff was finally able to regain his freedom.

### Plaintiff's Exoneration

32. Unbeknownst to Plaintiff at the time, the true perpetrator of the crimes Plaintiff was accused of committing had been victimizing other little girls in the same area that

Plaintiff allegedly committed the sexual assaults using the same *modus operendi* that Plaintiff supposedly used in committing the crimes.

33.   Due to the Defendant Officers' fabrication of Plaintiff's confession, and the resulting charges therefrom, the true molester remained free on the streets and molested other girls before finally being brought to justice by other police detectives.

34.   The true molester was convicted of numerous counts of sexual assault on a child.  Upon learning that Plaintiff was absolutely innocent of his alleged crimes, the Cook County State's Attorney dropped all charges against Plaintiff and he was finally released.

35.   Nevertheless, due to the false confession obtained by the Defendant Officers, Plaintiff was forced to spend years in jail treated as a child molester.  While other children his age were going to high school, attending proms, and obtaining their first jobs, Plaintiff reached adulthood surrounded by bars, murderers, and rapists.

## Legal Claims

36.   In the manner described more fully above, the Defendant Officers violated Plaintiff's constitutional rights.  Among others, the Defendant Officers violated

Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

37. For example, to build a false case against Plaintiff, the Defendant Officers fabricated evidence which falsely implicated Plaintiff, and destroyed and/or otherwise withheld from Plaintiff and his attorney evidence which would have helped exonerate him, all in violation of the constitution.

38. The Defendant Officers also coached and manipulated witnesses to falsely implicate Plaintiff in this crime.

39. The Defendant Officers' conduct also constitutes state law malicious prosecution and intentional infliction of emotional distress in that they maliciously caused Plaintiff to be prosecuted for a crime he did not commit, all without probable cause.

40. The Defendant Officers, acting individually and in concert, improperly subjected Plaintiff to judicial proceedings for which there was no probable cause, in violation of Illinois law. These actions were undertaken maliciously, resulting in injury. All proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

41. The Defendant Officers also reached an agreement to deprive Plaintiff of his constitutional rights via illicit

10

means, and one or more of them took actions in furtherance of this conspiracy, all in violation of both state and federal law.

42. The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, wantonness, and reckless indifference to the rights of others such that the Defendant Officers' actions shock the conscience.

43. As a direct and proximate result of the above-described conduct, Plaintiff has suffered actual and special damages including, *inter alia*, extreme emotional distress.

44. Plaintiff's claims regarding the length of his confinement at the Chicago police station before being brought before a magistrate for a *Gerstein* hearing are timely because the statute of limitations on these claims is tolled by the presence of a pending class action regarding these same issues, of which Plaintiff is a member. The class was certified by Judge Gettleman in the case captioned *Dunn v. City of Chicago*, 04 C 6804, and defined as "All persons arrested on suspicion of a felony without an arrest warrant and who were detained by the CPD in excess of 48 hours without a judicial probable cause hearing at any time from March 15, 1999, to [November 30, 2005]." Judge Gettleman's order can be found on Westlaw at *Dunn v. City of Chicago*, 2005 WL 3299391 (N.D. Ill. Nov. 30, 2005).

45. Plaintiff's injuries were proximately caused by the policies and practices on the part of Defendant City to

pursue wrongful convictions through, *inter alia*, profoundly flawed investigations. In this way, these Defendants violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

46. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department, were able to exist and thrive because governmental policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

47. The widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training and/or any legitimate mechanisms for oversight or punishment.

48. All of the Defendant Officers' interactions with Plaintiff and the criminal case brought against him were undertaken under color of law, and within the scope of the individual defendants' employment.

49. Because Defendants ROBERT BARTIK; L. RIGGIO, Star No. 40170; M. GONZALEZ, Star No. 40253; J. ACOSTA, Star No. 40288; B. OKRASINSKI, Star No. 7247; F. HERRERA, Star No. 13273; F. SKOROEK, Star No. 21295; M. SOFERERNNOVIC, Star No. 20761; and the as-yet unidentified Chicago police officers acted within the scope of their employment with the City of Chicago, Defendant

12

City is liable as their employer for any resulting damages and any award of attorneys' fees.

WHEREFORE, Plaintiff, Dany Lanza, respectfully requests that this Court enter judgment in his favor and against Defendants, THE CITY OF CHICAGO; Chicago Police Officers ROBERT BARTIK; L. RIGGIO, Star No. 40170; M. GONZALEZ, Star No. 40253; J. ACOSTA, Star No. 40288; B. OKRASINSKI, Star No. 7247; F. HERRERA, Star No. 13273; F. SKOROEK, Star No. 21295; M. SOFERERNNOVIC, Star No. 20761; and other UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED:


 S/Russell Ainsworth
Attorneys for Plaintiff


Arthur Loevy
Jon Loevy
Russell Ainsworth
Elizabeth Mazur
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900