IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DANY LANZA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 5103 |
| | ) | |
| v. | ) | |
| | ) | Judge Andersen |
| CITY OF CHICAGO; Chicago Police | ) | |
| Officer ROBERT BARTIK; L. RIGGIO, Star | ) | Magistrate Nolan |
| No. 40170; M. GONZALEZ, Star No. 40253; | ) | |
| J. ACOSTA, Star No. 40288; | ) | |
| B. OKRASINSKI, Star No. 7247; | ) | |
| F. HERRERA, Star No. 13273; F. SKOROEK, | ) | |
| Star No. 21295; M. SOFERERNNOVIC, Star | ) | |
| No. 20761; UNKNOWN CHICAGO POLICE | ) | |
| OFFICERS; COOK COUNTY; and Cook County | ) | |
| Assistant State's Attorney DANIEL | ) | |
| FAERMARK, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, DANY LANZA, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO; Chicago Police Officers ROBERT BARTIK; L. RIGGIO, Star No. 40170; M. GONZALEZ, Star No. 40253; J. ACOSTA, Star No. 40288; B. OKRASINSKI, Star No. 7247; F. HERRERA, Star No. 13273; F. SKOROEK, Star No. 21295; M. SOFERERNNOVIC, Star No. 20761; UNKNOWN CHICAGO POLICE OFFICERS (collectively, "Defendant Chicago Police Officers"); COOK COUNTY; and Cook County Assistant State's Attorney DANIEL FAERMARK, states as follows:

## Introduction

1.     Plaintiff brings this suit seeking redress for violations of his constitutional rights.  Specifically, Plaintiff alleges that the Defendants falsely accused him of confessing to molesting two young girls.  On the basis of the Defendants' fabricated confession, the then-fifteen year-old Plaintiff spent almost four years wrongfully incarcerated until the real molester was identified and the prosecutor agreed to drop all charges against Plaintiff.

## Jurisdiction and Venue

2.     This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.     Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## Factual Background

4.     Plaintiff Dany Lanza is twenty-two years-old.  At the time of his false arrest, Plaintiff was only fifteen years-old.  Plaintiff had never been charged with committing any crime whatsoever either then or since, apart from the false charges complained of herein.

5.     On or about November 26, 2001, Plaintiff was visiting his aunt's family at her apartment complex in Chicago. While he was with his cousin trying to get the building manager

to fix the boiler for his aunt's apartment, Plaintiff was approached by a woman claiming that he looked like someone who had molested her daughter some months ago.

6.    Plaintiff did not speak English and did not understand what the woman was saying.  To clarify the confusion, Plaintiff's cousin went to alert Plaintiff's mother.

7.    Knowing that her son did nothing wrong, and hoping to clear up any dispute as expeditiously as possible, Plaintiff's mother summoned the police to the scene.

8.    Defendants Okrasinski and Herrera arrived and brought Plaintiff to the police station for investigation.  At the scene, Plaintiff's mother informed the officers that Plaintiff was only fifteen years-old, but she (nor any other family member) was not permitted to accompany him to the police station.

## Plaintiff's Interrogation

9.    At the police station, Plaintiff was interrogated at length about the molestations.  Plaintiff, in Spanish, emphatically told his interrogators that he had nothing to do with the crime.  Plaintiff was not read his *Miranda* warnings prior to his questioning.

10.   All told, the fifteen year-old Plaintiff held for over forty-eight hours without any legitimate law enforcement justification for holding him that length of time.  During his

3

interrogation, he was never fed, he was never allowed to make a telephone call (despite his repeated requests), and he was never permitted to see his mother or any other member of his family.

11. After repeatedly denying that he had anything to do with the crime, Plaintiff finally requested that he be given a lie detector examination to prove his innocence.

12. Plaintiff was taken to Defendant Bartik, a polygraph examiner for the Chicago Police Department.

13. Rather than giving Plaintiff a polygraph examination as requested, however, the Defendants continued to interrogate Plaintiff in the polygraph room. After refusing to confess, Plaintiff was taken back to the police station for further interrogation.

14. Unbeknownst to Plaintiff, however, Defendant Bartik and other Defendants concocted a story that Plaintiff had "confessed" to the crimes on two separate occasions before being given a polygraph examination.

15. Specifically, Bartik and the two detectives claimed that before Bartik had the opportunity to give Plaintiff a lie detector test, Plaintiff supposedly blurted out a confession to the molestation.

16. Sadly, Plaintiff was not the only person who had been victimized by Defendant Bartik in the exact same manner.

4

### Defendant Bartik's History

17. In fact, Defendant Bartik has made a practice of falsely claiming that other persons orally confessed to him, as exemplified by the following examples:

a. Defendant Bartik falsely claimed that Donny McGee orally confessed to a gruesome murder before Bartik had the chance to administer a lie detector test to Mr. McGee. Despite Bartik's claim that Mr. McGee confessed, Mr. McGee was acquitted at trial after the evidence revealed that Mr. McGee was making phone calls to his groomsmen in preparation for his upcoming wedding at the time of the murder. Furthermore, additional DNA testing performed on blood found at the scene of the murder excluded Mr. McGee.

b. Defendant Bartik also falsely claimed that John Fulton orally confessed to him. Bartik, however, did not tell the prosecutor or the investigating detectives about this supposed confession until within a week before trial. Again, as in this case, Bartik claimed that Mr. Fulton confessed to him even before he had the chance to administer a lie detector test to him.

c. Defendant Bartik also falsely claimed that Lamar Blount orally confessed to murder, supposedly before Bartik had the chance to give him a lie detector test. Despite that alleged confession, Mr. Blount was cleared of all charges.

       d.   Defendant Bartik falsely claimed that Rory Cook orally confessed to him about committing a murder. According to Bartik, Mr. Cook also blurted out his confession before he could administer a lie detector test.

18.   In the realm of polygraph administration, it is extremely rare for someone to confess prior to the examination. For this to supposedly happen repeatedly with Bartik defies all statistical probability.

### Plaintiff's Mother Attempts to See Her Son

19.   Meanwhile, back at the police station, Plaintiff's mother repeatedly tried to see her son but was prevented from doing so by unknown Defendants Officers.

20.   The first night that Plaintiff was arrested, his mother waited at the police station for several hours in an effort to see her son, but she was never permitted access to him. She offered to bring food for her son but was told (falsely) that the officers were taking care of his needs.

21.   On the second day of Plaintiff's arrest, his mother returned to the police station, but was told that she still could not see her son. Unknown Defendants, however, told her that her son would call her soon and that she should return home to await his call.

22.   Plaintiff's mother returned home but did not receive any call from her son that day. Realizing that she could

not help her son by herself, she hired a private attorney to represent her son.

### Plaintiff's Invocation of the Fifth Amendment

23. The attorney, Dawn Sheikh, reported to the police station on the evening of November 27, 2001 to meet with Plaintiff and talk to the investigators. Ms. Sheikh spoke with both Defendant Riggio and Defendant Faermark. Although Plaintiff had supposedly already "confessed" to the crime on two separate occasions, at no time did either Riggio or Faermark tell Ms. Sheikh that Plaintiff had done so.

24. After Plaintiff met with Ms. Sheikh, Defendants notified her that they were bringing Plaintiff to a lock up cell and stopping their investigation for the night. They also told Ms. Sheikh that they would not resume their investigation until the next day.

25. Because Ms. Sheikh understood that the investigation was ending for the night and that her client would not be questioned, she left the police station for the night. Before leaving, she specifically told certain of the Defendant Chicago Police Officers and Defendant Faermark not to interrogate or have any further contact with Plaintiff whatsoever.

26. Within hours, Defendants nevertheless continued to interrogate Plaintiff after Ms. Sheikh left, ignoring the invocation of Plaintiff's Fifth Amendment rights.

7

## Plaintiff's Fabricated Confession

27. In addition to not being fed, not having contact with his family, and not being allowed to make a telephone call, the Defendants who interrogated the Plaintiff began to threaten him. They told Plaintiff that they would have him taken to the County jail where he would be raped. He was told that he would never see his mother again.

28. Finally, Plaintiff was given a form to sign. The form was in English, a language that he was unable to speak, read, or write. Plaintiff was told that if he signed the form where indicated, he could go home. One of the Defendants even pretended to place a telephone call to his mother, acting out a conversation in which she was supposedly told to come pick up Plaintiff from the police station. Based on what the Defendants were telling him, Plaintiff signed the form.

29. Unbeknownst to Plaintiff, the form that he signed was actually a fabricated confession. The confession was totally false and was fabricated by the Defendants.

30. On the basis of his fabricated confession, Plaintiff was transferred to the Cook County Jail and charged with twenty-six counts of sexual assault to a minor and related offenses. That confession was introduced as evidence against Plaintiff at various hearings during his criminal case.

31.   Plaintiff was forced to live as an innocent fifteen year-old boy among adult murderers and rapists at Cook County Jail.  The terror he experienced each day as a result of his incarceration was profoundly damaging.

32.   Moreover, Plaintiff was not a hardened teenager at the time he was incarcerated.  Not a member of any gang, Plaintiff was totally unfamiliar with the criminal justice system and the ways of criminals.  Up until the false charges here, Plaintiff had never set foot in a courtroom or been questioned by police detectives.

33.   It was not until years later that Plaintiff was finally able to regain his freedom.

### Plaintiff's Exoneration

34.   Unbeknownst to Plaintiff at the time, the true perpetrator of the crimes Plaintiff was accused of committing had been victimizing other little girls in the same area that Plaintiff allegedly committed the sexual assaults using the same *modus operandi* that Plaintiff supposedly used in committing the crimes.

35.   Due to the Defendants' fabrication of Plaintiff's confession, and the resulting charges therefrom, the true molester remained free on the streets and molested other girls before finally being brought to justice by other police detectives.

36.    The true molester was convicted of numerous counts
of sexual assault on a child.  Upon learning that Plaintiff was
absolutely innocent of his alleged crimes, the Cook County
State's Attorney dropped all charges against Plaintiff and he was
finally released.

37.    Nevertheless, due to the false confession obtained
by the Defendants, Plaintiff was forced to spend years in jail
treated as a child molester.  While other children his age were
going to high school, attending proms, and obtaining their first
jobs, Plaintiff reached adulthood surrounded by bars, murderers,
and rapists.

### Count I -- 42 U.S.C. § 1983
### Fourth Amendment -- Unreasonable Detention

38.    Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

39.    As described more fully above, the Defendants
unreasonably seized Plaintiff by detaining him in excess of 48-
hours without a *Gerstein* hearing.

40.    The misconduct described in this Count was
undertaken pursuant to the policy and practice of the Chicago
Police Department:

a.    The Chicago Police Department detention
policy and practice allows its officers to hold citizens in its
police stations (both interrogation rooms and lock-up cells)
without the benefit of judicial review for unconstitutional

10

periods of time.

        b.    This practice directly contravenes the Fourth Amendment which requires either an arrest warrant or prompt review by a judge of the Chicago Police Department's supposed justification for depriving an arrestee of his/her liberty. However, the Chicago Police Department does not honor this right to judicial review.

        c.    Rather, the Chicago Police Department allows its officers to hold arrestees for extended periods of time in order to forestall this very judicial scrutiny while they attempt to develop grounds to justify the arrest.  Chicago police officers can and routinely do rely on the extended detentions as a tool that allows them to make arrests for unconstitutional reasons, such as mere hunches or even animus, and then justify them after the fact by developing sufficient supposed evidence during the period of illegal detention.  All too often the "justifications" Chicago police officers develop during these illegal detentions consist of fabricated evidence and coerced confessions.

        d.    This very practice was documented forty-five years ago in a publication by the American Civil Liberties Union, entitled <u>Secret Detention by the Chicago Police</u>.  That report, as well as multitudinous criminal and civil cases over the years and more recent media attention have all put the policymakers of the

Chicago of Chicago on notice of these routine violations.
However, the policymakers have not remedied the system.

      e.   The City of Chicago caused this deprivation
of Plaintiff's rights and is liable for Plaintiff's damages,
*inter alia*, because the City of Chicago maintains
unconstitutional policies, customs, and widespread practices that
caused these violations. Moreover, the City of Chicago fails to
adequately train and discipline its officers in a manner that
causes such violations. Further, the City of Chicago has been
deliberately indifferent to the need for different policies,
training and discipline. Also, the City of Chicago has failed to
act to remedy the patterns of misconduct described in the
preceding paragraphs, despite actual knowledge of the same,
thereby causing the types of injuries alleged here.

      41. Plaintiff's claims regarding the length of his
confinement at the Chicago police station before being brought
before a magistrate for a *Gerstein* hearing are timely because the
statute of limitations on these claims is tolled by the presence
of a pending class action regarding these same issues, of which
Plaintiff is a member. The class was certified by Judge
Gettleman in the case captioned *Dunn v. City of Chicago*, 04 C
6804, and defined as "All persons arrested on suspicion of a
felony without an arrest warrant and who were detained by the CPD
in excess of 48 hours without a judicial probable cause hearing

at any time from March 15, 1999, to [November 30, 2005]." Judge Gettleman's order can be found on Westlaw at *Dunn v. City of Chicago*, 2005 WL 3299391 (N.D. Ill. Nov. 30, 2005).

42. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

43. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

44. As a result of the unjustified violation of Plaintiff's rights by the Defendants, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

## Count II -- 42 U.S.C. § 1983
## Conspiracy

45. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

46. Defendants, all acting within the scope of their employment and under color of state law, reached an agreement among themselves to unlawfully detain and deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

47. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

13

48. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and he suffered injury, including but not limited to emotional distress.

49. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

50. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department:

a. The Chicago Police Department detention policy and practice allows its officers to hold citizens in its police stations (both interrogation rooms and lock-up cells) without the benefit of judicial review for unconstitutional periods of time.

b. This practice directly contravenes the Fourth Amendment which requires either an arrest warrant or prompt review by a judge of the Chicago Police Department's supposed justification for depriving an arrestee of his/her liberty. However, the Chicago Police Department does not honor this right to judicial review.

c. Rather, the Chicago Police Department allows its officers to hold arrestees for extended periods of time in order to forestall this very judicial scrutiny while they attempt

14

to develop grounds to justify the arrest. Chicago police officers can and routinely do rely on the extended detentions as a tool that allows them to make arrests for unconstitutional reasons, such as mere hunches or even animus, and then justify them after the fact by developing sufficient supposed evidence during the period of illegal detention. All too often the "justifications" Chicago police officers develop during these illegal detentions consist of fabricated evidence and coerced confessions.

d.    This very practice was documented forty-five years ago in a publication by the American Civil Liberties Union, entitled <u>Secret Detention by the Chicago Police</u>. That report, as well as multitudinous criminal and civil cases over the years and more recent media attention have all put the policymakers of the Chicago of Chicago on notice of these routine violations. However, the policymakers have not remedied the system.

e.    The City of Chicago caused this deprivation of Plaintiff's rights and is liable for Plaintiff's damages, *inter alia*, because the City of Chicago maintains unconstitutional policies, customs, and widespread practices that caused these violations. Moreover, the City of Chicago fails to adequately train and discipline its officers in a manner that causes such violations. Further, the City of Chicago has been deliberately indifferent to the need for different policies,

training and discipline. Also, the City of Chicago has failed to act to remedy the patterns of misconduct described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

### Count III -- State Law Claim
### Malicious Prosecution

51. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

52. In the manner described more fully above, Plaintiff was improperly subjected to judicial proceedings unsupported by probable cause to believe that he had committed a crime.

53. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of his innocence.

54. Specifically, the Defendants accused Plaintiff of criminal activity knowing those accusations to be without probable cause **and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.**

55. The Defendants made statements regarding Plaintiff's alleged culpability with knowledge that the statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

16

56.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

57.   As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to emotional distress.

### Count IV -- State Law Claim
### Conspiracy

58.   Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

59.   Before criminal charges were filed against Plaintiff, the Defendants, acting under color of law and within the scope of their employments, entered into an agreement to improperly subject Plaintiff to judicial proceedings unsupported by probable cause to believe that he had committed a crime.  As a result of this agreement, one or more of the Defendants improperly subjected Plaintiff to judicial proceedings unsupported by probable cause.

60.   In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors acting under color of law.

61.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

17

62.  As a proximate result of Defendants' conspiracy, Plaintiff suffered injuries, including but not limited to emotional distress.

### Count V -- State Law Claim
### Intentional Infliction of Emotional Distress

63.  Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

64.  In the manner described more fully above, Defendants engaged in extreme and outrageous conduct.

65.  Defendants either intended that their conduct would cause severe emotional distress to the Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress to the Plaintiff.

66.  As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to severe emotional distress.

67.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count VI -- State Law Claim
### Respondeat Superior

68.  Each Paragraph of this Complaint is incorporated herein.

69. In committing the acts alleged in the preceding paragraphs, the Defendant Chicago Police Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

70. In committing the acts alleged in the preceding paragraphs, the Defendant Daniel Faermark was an employee and agent of Cook County acting at all relevant times within the scope of his employment.

71. Defendant City of Chicago is liable as principal for all torts committed by its agents.

72. Defendant Cook County is liable as principal for all torts committed by its agents.

**Count VII -- State Law Claim
Indemnification**

73. Each Paragraph of this Complaint is incorporated herein.

74. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

75. The Defendant Chicago Police Officers are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

76.    Defendant Daniel Faermark is or was an employee of Cook County who acted within the scope of his employment in committing the misconduct described above.

WHEREFORE, Plaintiff, DANY LANZA, respectfully requests that this Court enter judgment in his favor and against Defendants, THE CITY OF CHICAGO; Chicago Police Officers ROBERT BARTIK; L. RIGGIO, Star No. 40170; M. GONZALEZ, Star No. 40253; J. ACOSTA, Star No. 40288; B. OKRASINSKI, Star No. 7247; F. HERRERA, Star No. 13273; F. SKOROEK, Star No. 21295; M. SOFERERNNOVIC, Star No. 20761; other UNKNOWN CHICAGO POLICE OFFICERS; COOK COUNTY; and Cook County Assistant State's Attorney DANIEL FAERMARK, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

20

RESPECTFULLY SUBMITTED:


 S/Elizabeth Mazur
Attorneys for Plaintiff


Arthur Loevy
Jon Loevy
Russell Ainsworth
Elizabeth Mazur
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900


## CERTIFICATE OF SERVICE

        I, Elizabeth Mazur, an attorney, certify that on June 30,
2009, I delivered a copy of this document to all counsel of
record via the CM/ECF filing system.

                        S/Elizabeth Mazur