**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANY LANZA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO, ROBERT** | ) | **No. 08 C 5103** |
| **BARTICK, L. RIGGIO, M.** | ) | |
| **GONZALEZ, J. ACOSTA, B.** | ) | |
| **OKRASINKSI, F. HERRERA,** | ) | |
| **F. SKOROEK, M. SOFERERNNOVIC,** | ) | |
| **DANIEL FAERMARK, and COOK** | ) | |
| **COUNTY** | ) | **Wayne R. Andersen** |
| | ) | **District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of defendants Daniel Faermark and the
County of Cook (collectively "the County defendants") to dismiss the claims asserted against
them for: 1) malicious prosecution; 2) conspiracy arising out of the malicious prosecution; 3)
intentional infliction of emotional distress; 4) respondeat superior; and 5) indemnification.  For
the reasons set forth below, the County defendants' motion to dismiss is granted.  Daniel
Faermark and Cook County are dismissed as defendants in this lawsuit.

## BACKGROUND

On September 8, 2008, plaintiff Dany Lanza ("Lanza") filed this lawsuit, which stems
from the arrest and subsequent prosecution for the molestation of two minor girls.  Lanza claims
that on November 26, 2001, he was visiting his aunt at her apartment complex and a woman
approached him claiming that he resembled a man who molested her daughter months prior.  (2d

Am. Compl. ¶ 5.)  The complaint asserts that because Lanza was a minor and did not speak English, his mother called the police to help clarify the situation.  (*Id.* ¶¶ 6-7.)  Officers Okrasinski and Herrera arrived at the apartment complex and allegedly arrested Lanza and brought him to the police station.  (*Id.* ¶ 8.)

The complaint asserts that Lanza was interrogated at length without receiving his Miranda warnings, was held for longer than forty-eight hours without receiving a probable cause hearing, and was not fed or given the opportunity to see a family member during the interrogation.  (*Id.* ¶¶ 9-10.)  Further, Lanza alleges that, when he requested a polygraph examination, he was brought to a separate area and the interrogation resumed.  (*Id.* ¶ 13.)  The complaint also asserts that defendant Bartik and two detectives claimed that Lanza confessed to the molestation before they had the opportunity to give him a lie detector test.  (*Id.* ¶ 15.)  Lanza's mother obtained an attorney, Dawn Sheikh ("Sheikh"), to represent him, and the complaint alleges that when Sheikh was at the police station, neither defendant Riggio nor defendant Faermark told Sheikh that Lanza had already "confessed" to the crime on two separate occasions.  (*Id.* ¶ 23.)  The complaint further alleges that officers continued interrogating Lanza outside of Sheikh's presence, even after Faermark, the Assistant State's Attorney reviewing the State's criminal case against Lanza, made assurances that they would not do so.  (*Id.* ¶¶ 25-26.)

Lanza, a Spanish speaker, claims that eventually he was given a "form" written in English that, unbeknownst to him, was actually a fabricated confession.  (*Id.* ¶¶ 28-29.)  Lanza alleges that he was told that he would be able to go home if he signed it.  (*Id.*)  The complaint asserts that after signing, Lanza was immediately transferred to Cook County Jail and charged with several counts of sexual assault and related offenses.  (*Id.* at ¶ 30.)  The allegedly fabricated

confession was then used against Lanza in hearings during his criminal case.  (*Id.*)

Furthermore, Lanza alleges that in 2003, Jose Rivas, the actual perpetrator, was arrested and confessed to being active in the area since 1999, but that Lanza's attorneys did not learn of Rivas's crimes until 2007.  (Pl.'s Resp. at 2-3.)  Rivas ultimately confessed to the offenses for which Lanza had been charged and the Cook County State's Attorney's Office dropped the charges against Lanza in 2008.  *Id.*  By the time the charges were dropped, Lanza had spent almost four years in jail.  (2d. Am. Compl. ¶ 1.)  Approximately five months after the charges were dropped, Lanza filed this lawsuit.  (Pl.'s Resp. at 3.)

Based upon the allegations set forth above, Lanza has asserted several claims against the City of Chicago, several Chicago police officers (collectively "the City defendants"), Faermark, and Cook County.  In Counts I & II Lanza asserts Section 1983 claims for unreasonable detention and conspiracy solely against the City defendants.  In Counts III, IV, and V, Lanza sets forth claims for malicious prosecution, conspiracy, and intentional infliction of emotional distress against the City defendants and Faermark (Cook County is also included in Count IV for conspiracy).  Counts VI and VII set forth claims for respondeat superior and indemnification against the City of Chicago and Cook County.

On June 2, 2009, the court granted in part and denied in part the City defendants motion to dismiss.  Additionally, we ordered Lanza to file a second amended complaint that clarified the remaining claims.  On June 30, 2009, Lanza filed his second amended complaint.  On July 20, 2009, the County defendants filed a motion to dismiss Lanza's claims against them (Counts III-V as to Faermark and Counts IV, VI and VII as to Cook County).  We now turn to that motion.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint must describe the claim with sufficient detail as to "give the defendants fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

4

**DISCUSSION**

I.      **Counts I & II: Section 1983 Unreasonable Detention and Conspiracy**

As a preliminary matter, the County defendants moved to dismiss Counts I and II,

Lanza's Section 1983 claims for unreasonable detention and conspiracy.  Lanza's response to the

County defendants' motion to dismiss clarifies that Count I is against the City of Chicago only

and Count II was included in his Second Amended Complaint in error.  (Pl.'s Resp. at 2.)

Therefore, Counts I and II are dismissed as to the County defendants.

II.     **Faermark has Prosecutorial Immunity for Counts III, IV, and V**

Based upon the facts set forth above, as well as Lanza's specific allegations against the

County defendants, which claim that he was improperly subjected to judicial proceedings

unsupported by probable cause that resulted in severe emotional distress, (2d Am. Compl. ¶¶ 52,

59, 65.), Lanza asserts three claims against Faermark: 1) malicious prosecution; 2) conspiracy;

and 3) intentional infliction of emotional distress.  Additionally, he sets forth claims for

conspiracy, respondeat superior and indemnification against Cook County.

The County defendants move to dismiss the three claims against Faermark on the

grounds that, at all relevant times, Faermark was acting within the scope of his prosecutorial

responsibilities in evaluating the criminal charges and initiation of judicial proceedings against

Lanza.  (Def's Reply at 12.)  They argue that the actions of Faermark in speaking with the

plaintiff's attorney and acquiring a written statement from Lanza fall within the purview of

"obtaining, reviewing, and evaluating of evidence," which is required to prepare for the initiation

of the criminal process and a trial.  *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976).  This

preparation includes actions "preliminary to the initiation of a prosecution and actions apart from

the courtroom." *Id.* at 430-31 nn.32-33. Therefore, Faermark's actions fall within the scope of

traditional prosecutorial functions and are protected by absolute prosecutorial immunity. *Van de*

*Kamp v. Goldstein*, 129 S. Ct. 855 (2009); *Buckley v. Fitzsimmons*, 509 U.S. 259, 274

(1993)(holding that actions such as "professional evaluation of evidence assembled by the

police" are absolutely protected because they are done in anticipation of judicial proceedings);

*Imbler v. Pachtman*, 424 U.S. at 431 (prosecutor's actions that are "intimately associated with

the judicial phase of the criminal process" are entitled to absolute immunity).

Lanza argues that Faermark is not entitled to absolute immunity because he was not

performing a prosecutorial function. Rather, Lanza contends that Faermark's actions on

November 26, 2001 were purely investigative, and were not connected to the initiation or

presentation of a criminal case in court. He claims in his response brief that Faermark fabricated

a confession and coerced Lanza to sign it. However, the allegations against Faermark in Lanza's

Second Amended Complaint are threadbare. The only allegations that specifically mention

Faermark are: 1) that Faermark failed to inform Ms. Sheikh, Lanza's attorney, that Lanza had

already "confessed" to the crime, and 2) that Faermark was told by Ms. Sheikh not to interrogate

Lanza after she left, but interrogations continued nonetheless. (2d Am. Compl. ¶¶ 23, 25.)

Lanza fails to allege in his complaint that Faermark was actually present during these subsequent

interrogations.

Some courts have analyzed prosecutorial immunity under the rubric of "public official

immunity," in which officials are protected for acts "performed within their official discretion."

*See Aboufaris v. City of DeKalb,* 305 Ill. App. 3d 1054, 1065, 713 N.E.2d 804, 812 (Ill. App. Ct.

1999)(applying "public official immunity" to state law claims against an assistant state's

attorney); *contra White v. City of Chicago*, 369 Ill. App. 3d 765, 861 N.E.2d 1083 (Ill. App. Ct.

2006) (discussing "absolute prosecutorial immunity"). However, we have previously held that,

"[a]lthough under Illinois law there is a doctrine of public official immunity which has a lack of

malice requirement [in order for the immunity to apply], such is not the immunity afforded

prosecutors." *Hughes v. Krause*, No. 08 C 5792, 2008 U.S. Dist. LEXIS 54461, at *4 (N.D. Ill.

July 17, 2008). Rather, we found that "[p]rosecutors, like judges, must be allowed to perform

the functions of their jobs fearlessly and without fear of consequence." *Id.* In so holding, we

relied on *Aboufaris*, in which the Illinois Appellate Court concluded that "a prosecutor acting

within the scope of her prosecutorial duties enjoys immunity from civil liability, the same

immunity afforded to the judiciary." *Aboufaris*, 305 Ill. App. 3d at 1065, 713 N.E.2d at 812.

Similarly, we relied on *White*, in which the Illinois Appellate Court affirmed the lower court's

dismissal of both the state and federal claims asserted against the defendant prosecutors based

upon absolute immunity. *White*, 369 Ill. App. 3d, 861 N.E.2d.

Furthermore, the Seventh Circuit has also affirmed the doctrine of absolute prosecutorial

immunity. In *Spiegel v. Rabinovitz*, 121 F.3d at 251 (7th Cir. 1997), plaintiff filed a Section

1983 claim for malicious prosecution based on allegations that the Assistant State's Attorney

conducted a willfully incomplete and inadequate assessment of the case. *Spiegel*, 121 F.3d at

254. In holding that the Assistant State's Attorney was entitled to absolute immunity, the

Seventh Circuit stated that prosecutorial immunity should be interpreted broadly and that

pursuant to "Illinois law, the State's Attorney, as a member of the executive branch of

government, is vested with exclusive discretion in the initiation and management of a criminal

prosecution." *Id.* at 257 (citing *Hunt v. Jaglowski*, 926 F.2d 689, 692 (7th Cir. 1991)). Finally,

7

the Supreme Court has also articulated policy reasons for absolute prosecutorial immunity. In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Court expressed concern that fear of potential liability would undermine a prosecutor's performance of his duties by forcing him to consider his own potential liability when making prosecutorial decisions and by diverting his "energy and attention . . . from the pressing duty of enforcing the criminal law." *Buckley*, 509 U.S. at 224 (citing *Imbler*, 424 U.S. at 424-425)).

Therefore, we find that, because prosecutors are entitled to the same absolute immunity as judges, and "[t]here is no question that the immunity afforded to the judiciary is absolute," *Hughes*, 2008 U.S. Dist. LEXIS 54461, at *4, Faermark is entitled to absolute prosecutorial immunity for his actions on November 26, 2001. Accordingly, we grant the County defendants' motion to dismiss the claims against Faermark for malicious prosecution, conspiracy, and intentional infliction of emotional distress.

## III.    Counts IV, VI, and VII are Dismissed as to Cook County

In Count IV Lanza asserts a state law claim for conspiracy arising out of his malicious prosecution against "all defendants." However, because we dismissed the malicious prosecution claim above, Lanza's conspiracy claim against Cook County is no longer tenable. *See Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill.2d 267, 272, 685 N.E.2d 1347, 1350 (Ill. 1997)(a civil conspiracy claim depends on the commission of some underlying tort).

In Counts VI and VII, Lanza sets forth claims against Cook County for respondeat superior and indemnification, respectively. The County defendants also move to dismiss both of these claims. Because we have dismissed the underlying claims against Faermark, we need not address the merits of the County defendants' motion on these claims. Rather, because Faermark

is not liable for malicious prosecution, conspiracy, and intentional infliction of emotional distress, there can be no liability as to Cook County pursuant to either a respondeat superior or indemnification theory.

## CONCLUSION

For the foregoing reasons, we grant the County defendants' motion [56] to dismiss all claims asserted against the County defendants. Daniel Faermark and Cook County are hereby dismissed as defendants in this case.


It is so ordered.

Wayne Andersen
_____
Wayne R. Andersen
United States District Court

Dated: October 1, 2009